INA K. EDGERTON, etc., Appellant, v. BALLSTON SPA NATIONAL BANK, *et al.*, Appellees.

200 So. 919
En Banc
Opinion Filed February 25, 1941
Rehearing Denied March 27, 1941

*Fisher & Sauls* and *Lincoln C. Bogue,* for Appellant;

*Cook, Harris, Barrett, McGlothlin & Dew,* for Appellees.

THOMAS, J.—The issues in this case were presented in the equity court by the initial pleading of Ina K. Edgerton and the answer of Ballston Spa National Bank, the answers of the other defendants not having offered any controversial matters which it is necessary for us to determine.

In the prayer of the bill of complaint and the subsequent amendment to it the complainant sought a decree of the court declaring a certain mortgage and note, which we will

later describe, to be her individual property, and ordering the encumbered real estate sold by a special master to satisfy her claim. In the alternative, and in the event it was found that the mortgage had been satisfied, she asked the court to determine that the estate of Albert C. Kniskern held the property in trust for her use and benefit free of the lien of the defendant Ballston Spa National Bank.

This prayer was predicated on allegations that in the year 1928 the defendants Brugginks were indebted to complainant and A. C. Kniskern, her father, in the sum of $14,625, and to secure the debt executed one promissory note to these mortgagees "or survivor," secured by a mortgage with the customary provisions for defeasance, payment of taxes, and costs incident to foreclosure. It was averred further that in 1931 the father, the owner of an undivided interest in the single note and mortgage, for a valuable consideration assigned the same to the complainant, and that on the same day the mortgagors for a cash consideration, made, executed and delivered to Kniskern a warranty deed conveying the mortgaged property to him alone in exchange for surrender to the debtors of the original note and mortgage, all without the knowledge or authority of the complainant who was a co-owner of the mortgage. It was further asserted that in June, 1932, Kniskern delivered to the defendant Ballston Spa National Bank, a mortgage on the identical property to secure an indebtedness of ten thousand dollars. Later in the same year Kniskern died leaving a last will and testament in which the complainant, Ina K. Edgerton, was named as sole beneficiary.

The factual situation established by the witnesses who testified for the various parties to this controversy is peculiar in many of its aspects. The original mortgagors were indebted to the father and daughter in the sum of

twelve thousand dollars and two thousand dollars, respectively, evidenced by separate notes secured by separate mortgages, on which total indebtedness interest of $625 had accrued. The mortgages securing these amounts were satisfied and in lieu thereof the one described in the bill of complaint was given, payable to both mortgagees or the survivor. This occurred in the year 1928.

Because of indifference on the part of the debtors in meeting the obligations of the instrument, Kniskern consulted an attorney with reference to the foreclosure of the mortgage and the liquidation of the debt. His daughter was in California at the time. Acting through his representative, J. E. Stephens, he proposed to the mortgagors that he would pay them eight hundred dollars for the execution of a deed and for their interest in certain personal property situated on the premises, in return for which he would cancel the indebtedness. Accordingly, on the 20th of May, 1931, the agent met with the debtors and their attorney, the money was paid and Kniskern surrendered the mortgage, and the promissory note on which there was written: "Paid by Delivery of Deed and etc., May 20, 1931." It does not appear that a satisfaction was given. Simultaneously, the representative received on behalf of Kniskern a warranty deed conveying the property to the principal. At the time of these negotiations the grantee of the deed, Kniskern, was not present and his spokesman on the occasion was J. H. Stephens. It is important to note here that no mention was made in the deed of the other mortgage holder and that she did not know the agent and, in fact, didn't become acquainted with him until the time of the trial. It was explained that the father, although in the city, was not actually present because he had had some difficulty with the debtors and it was thought that the matter might be closed with more harmony if he didn't appear.

On the same day Kniskern met the agent, Stephens, to receive a report of the transaction, and when he was told of the manner in which it was handled, reprimanded him because he felt that the interests of his daughter had not been protected. Thereupon, the same day, he executed an assignment of the entire mortgage to his daughter, despite the notation on the note which we have described, the warranty deed which he had received through his agent and the surrender of the mortgage to the ones who executed it. The deed was filed for record June 2 and the assignment May 30, 1931.

After recordation of these instruments the bank, without making any investigation to ascertain the state of the title of the property, accepted a mortgage from Kniskern to secure a loan of ten thousand dollars.

The chancellor was of the opinion that by reason of the relationship between Ina K. Edgerton and A. C. Kniskern, and the possession of the note by the latter who had held the same and had undertaken the transaction toward the liquidation of the indebtedness, he was authorized to satisfy the mortgage by acceptance of the deed and to bind his daughter for her share of the investment. The court felt that in these circumstances, and because of the tacit consent of the daughter, the rule that a co-payee or agent cannot accept anything other than cash in the absence of special authority, should be relaxed. The court also held the view that the acts of the father had been ratified by the daughter because of the knowledge of the transaction gained by her some time later and her failure to repudiate what had been done. The ultimate conclusion was that the mortgage had been satisfied and could not be foreclosed, but that the father took title to the property for himself and in trust for his daughter in proportion to the amount of the loan advanced by each of them, namely, one-seventh by the

daughter and six-sevenths by the father. The bank was held to have taken its mortgage with constructive notice that the first mortgage had not been satisfied but had been transferred by Kniskern to Ina K. Edgerton. It was decided that this mortgage could be enforced as a first lien against six-sevenths of the property.

Thus, under the final decree, one-seventh of the property was held in trust for Ina K. Edgerton free of all encumbrances, and six-sevenths of the property was subject to the first mortgage of the bank to secure the sum of ten thousand dollars.

We feel called upon, first, to determine whether there was authority on the part of the father to act as he did and bind his daughter. From the fact of relationship itself, we think that there was no right on his part to receive in exchange for money due on a mortgage made to himself and his daughter anything other than legal tender. We are particularly strengthened in this position because there is no dispute that the mortgage eventually given to the father and daughter was a combination of ones held by each of them separately, signed by the same mortgagors. Little importance can be attached to the fact that the father held the promissory note for a great part of, if not the entire, period between the time of the creation of the indebtedness and the attempted liquidation. Although the interest in the indebtedness was divisible the note evidencing it was not and, of course, because of this physical fact, had to be in the possession of but one person.

We are impressed by the actions of the father after he had received the report of his agent, for it is apparent that, even if we assume that any right the father may have had to represent the daughter could be delegated by him to another, the person whom he chose did not transact the business in the fashion he intended. This is established by

his criticism of the representative's actions when he learned that no provision had been made to secure the daughter's interest and his attitude was made more plain by his attempt to correct this oversight by giving an assignment to the daughter, although the mortgage had been surrendered to the mortgagors and the note marked paid.

We agree with the chancellor that there was ample testimony to support the conclusion that the daughter was not entitled to an undivided half interest in the amount of the mortgage. The amount of her claim is easily traceable because of the original mortgage she held for only one-seventh of the total indebtedness. The amount of the mortgage eventually given to the father and daughter was precisely the same as the total of the two mortgages they had held with the accrued interest on both items of indebtedness added to and made a part of the latter incumbrance securing the joint note. We cannot agree, however, that the bank has a first lien on six-sevenths of the property and that the other seventh is held by the estate in trust for the appellant. To reach this conclusion it is necessary to hold, as the chancellor did, that the father was authorized to represent the daughter or that she subsequently ratified his action. We think that the testimony establishes the contrary situation.

In considering the power of the father to accept a deed to the mortgaged premises as a consideration for the surrender of the note and mortgage which he did not own entirely, we can attach little significance to the fact that he was in physical possession of the note and the mortgage securing it for, as we have stated, it was not possible for both payees to possess the instruments at the same time. So, this condition could not be made any real basis for his authority to deal with it as he wished without the permission or consent of the co-payee, even where the

relationship of father and daughter existed. The record does not convince us that any express power was given to him to make the exchange with the debtors which the father attempted to accomplish through the agent he personally chose. There is a dearth of evidence, too, that any authority was given by the daughter to the representative of the father's selection because, as we have said, she did not know him until the instant case was being tried. It may be that the father as one of the payees of the note could have accepted the amount due thereon in cash for discharge of the indebtedness, but as stated in this record there was no power on his part to bind his daughter in the negotiation with the mortgagors which culminated in the receipt of the deed and the cancellation of the indebtedness.

In these circumstances it hardly seems necessary to pass on the question whether he could have delegated any authority he may have had as the agent of his daughter to Stephens, who appeared in his behalf in the negotiations with the mortgagors, and this is particularly true because it is apparent from the record that the agent of the father's selection did not transact the business in accordance with his wishes. He indicated his discontent immediately he learned of his representative's actions in the exchange, and at once executed an assignment to his daughter of the mortgage although the original instrument had been delivered to the mortgagors.

We cannot reach the decision either that there was ratification on the part of the daughter. In addition to the circumstances which we have just related, it was established that she did not learn the details of the attempted liquidation of the debt until after her father's death, and there could have been no ratification unless the daughter was apprised of the essential particulars of the transaction between her father and the mortgagors, which we understand to be a

condition indispensable to ratification.   (See Branford State Bank v. Howell Co., 88 Fla. 493, 102 So. 649.)

Doubtless, the bank which took the second mortgage on the property could have easily determined the status of the title had it caused an investigation to be made of the public records, for it would have discovered · there the original mortgage and the assignment of it by one mortgagee to the other.   This information would have put them on notice of the daughter's claim, for, it will be remembered, although the original instrument was surrendered, no satisfaction of it was executed.   Having the conviction that the father was without authority to accept the property in exchange for the deed, it follows that the daughter's one-seventh interest in the mortgage has not been paid and that, therefore, it is superior to the one executed to the bank.   The decree should have been entered granting the prayer for sale of the property by a master in chancery, the proceeds to be applied after the payment of court costs and fees, to the daughter in discharge of her lien for one-seventh of the original mortgage and the interest accrued thereon.

The decree is reversed with instructions to enter one consistent with this opinion.

Reversed.

BROWN, C. J., TERRELL, BUFORD and ADAMS, J. J., concur.
WHITFIELD and CHAPMAN, J. J., not participating.